IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO:  23-_____ |
| v. | : | DATE FILED: _____ |
| STEPHEN DUFFUS-DOYLE | : | VIOLATIONS:<br>18 U.S.C. § 1343 (wire fraud – 15 counts) |
| | : | 18 U.S.C. § 1957 (monetary transaction of criminally derived property - 1 count) |
| | : | Notice of forfeiture |

**INDICTMENT**

**COUNTS ONE AND TWO**

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

1. Defendant STEPHEN DUFFUS-DOYLE resided in Philadelphia and Montgomery Counties, in the Eastern District of Pennsylvania.

2. Erion Real Estate Investors, LLC ("Erion") was a limited liability company that conducted real estate business in Philadelphia, Pennsylvania and that was owned and operated by defendant STEPHEN DUFFUS-DOYLE.

3. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy in a variety of ways, including by fostering the establishment and viability of small businesses and aiding in their economic recovery after community disasters. As part of its efforts, the SBA provided for business loans through banks, credit unions, and other lenders.

Those loans had government-backed guarantees. The SBA administered the Paycheck Protection Program ("PPP"), described in more detail below.

4. Harvest Small Business Finance, LLC ("Harvest") was a financial institution based in Laguna Hills, California and was an SBA-approved PPP lender.

5. The Philadelphia Housing Development Corporation ("PHDC") is a registered 501(c)(3) non-profit that provided various housing-related services in the City of Philadelphia, including administering the Emergency Rental Assistance program ("ERA"), described further below, on behalf of the City of Philadelphia.

6. The Public Health Management Corporation ("PHMC") is a registered 501(c)(3) non-profit that made payments to individuals whose applications for ERA assistance were approved by PHDC.

7. As a result of the COVID-19 pandemic, several federal laws were passed to assist individuals and businesses suffering from financial hardship.

8. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP. In April 2020, Congress authorized over $300 billion in PPP funding.

9. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules

and to make affirmative certifications to be eligible for the PPP loan. For example, in the PPP loan application, the business, through its authorized representative, was required to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, as part of the PPP loan application process, businesses had to provide documentation showing their payroll expenses and other information.

10. A PPP loan application was required to be processed by a participating lender or its partner. If a PPP loan application was approved, the participating lender funded the PPP loan using its own funds, which were 100% guaranteed by the SBA. In the course of processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees.

11. Proceeds from a PPP loan were legally required to be used only for certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if the business spent the loan proceeds on permissible items within a designated period of time and used a certain portion of the loan toward payroll expenses.

12. As detailed below, defendant STEPHEN DUFFUS-DOYLE defrauded the United States government and Harvest by submitting two fraudulent PPP loan applications and two fraudulent PPP loan forgiveness applications, and through this scheme defendant DOYLE fraudulently enriched himself.

## THE SCHEME TO DEFRAUD

13. From in or about April 2021 to in or about September 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

**STEPHEN DUFFUS-DOYLE**

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud the United States government and Harvest to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

*PPP Loan #1*

14. On or about April 19, 2021, defendant STEPHEN DUFFUS-DOYLE submitted via the Internet a PPP application to Harvest for a business called "Stephen Duffus Doyle" ("PPP Loan #1"). In the application, defendant DOYLE: (i) falsely represented that "Stephen Duffus Doyle" was a business founded in 2018 and had gross income in 2020 of $699,665; and (ii) requested a loan in the amount of $20,833 to pay for the payroll expenses of the business "Stephen Duffus Doyle." In support of the fraudulent application, defendant DOYLE submitted a phony IRS Form 1040C, which falsely stated that the business "Stephen Duffus Doyle" was an engineering firm that had gross income of $699,665 in 2020. In truth, the business "Stephen Duffus Doyle" did not exist and, as a result, did not have any gross income in 2020, and defendant DOYLE was not employed as an engineer in 2020.

15. On or about April 28, 2021, based on these materially false representations, Harvest approved defendant STEPHEN DUFFUS-DOYLE's application on behalf of the business "Stephen Duffus Doyle" and PPP loan proceeds of approximately $20,833

were deposited into a TD Bank account ending 9786, which was in the name of and controlled by defendant DOYLE.

16. On or about September 19, 2021, defendant STEPHEN DUFFUS-DOYLE submitted an application to the SBA via the Internet requesting that the loan principal and interest for PPP Loan #1 be forgiven based on his false representation that the PPP loan proceeds had been used for payroll expenses, when, in fact, the business "Stephen Duffus Doyle" did not exist and did not have any payroll expenses and defendant DOYLE used most of the loan proceeds to fund another, unrelated business venture.

*PPP Loan #2*

17. On or about April 23, 2021, defendant STEPHEN DUFFUS-DOYLE submitted via the internet another PPP application to Harvest for a business called "Stephen Duffus Doyle" ("PPP Loan #2"). In the application, defendant DOYLE: (i) falsely represented that "Stephen Duffus Doyle" was a business founded in 2018 and had gross income in 2020 of $699,665; and (ii) requested a loan in the amount of $20,833 to pay for the payroll expenses of the business "Stephen Duffus Doyle." In support of the fraudulent application, defendant DOYLE submitted a phony IRS Form 1040C, which falsely stated that the business "Stephen Duffus Doyle" was an engineering firm that had gross income of $699,665 in 2020. In truth, the business "Stephen Duffus Doyle" did not exist and, as a result, did not have any gross income in 2020, and defendant DOYLE was not an engineer.

18. On or about June 11, 2021, based on these materially false representations, Harvest approved defendant STEPHEN DUFFUS-DOYLE's application on behalf of the business "Stephen Duffus Doyle" and PPP loan proceeds of approximately $20,833 were deposited into a TD Bank account ending 9786, which was in the name of and controlled by

defendant DOYLE.

19. On or about September 19, 2021, defendant STEPHEN DUFFUS-DOYLE submitted an application to the SBA via the Internet requesting that the loan principal and interest for PPP Loan #2 be forgiven based on his false representation that the PPP loan proceeds had been used for payroll expenses, when, in fact, the business "Stephen Duffus Doyle" did not exist and did not have any payroll expenses and defendant DOYLE used the loan proceeds to fund another, unrelated business venture.

20. On or about the below dates, each date constituting a separate offense, in the Eastern District of Pennsylvania, defendant

**STEPHEN DUFFUS-DOYLE,**

having devised and intending to devise a scheme to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted by means of wire communication in interstate commerce, a writing, sign, signal, picture, and sound, that is, each wire communication constituting a separate count:

| Count | Date | Description |
|---|---|---|
| One | September 19, 2021 | Fraudulent application requesting forgiveness of the loan principal and interest for PPP Loan #1 that was submitted via the Internet from the Eastern District of Pennsylvania and processed through servers located in Oregon. |
| Two | September 19, 2021 | Fraudulent application requesting forgiveness of the loan principal and interest for PPP Loan #2 that was submitted via the Internet from the Eastern District of Pennsylvania and processed through servers located in Oregon. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS THREE THROUGH FIFTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1. Paragraphs One, Two, Five, and Six of Counts One and Two are realleged here.

2. The Consolidated Appropriations Act of 2021 ("CAA") and the American Rescue Plan Act ("ARPA") were federal laws enacted in or about December 2020 and March 2021, respectively. Like the CARES Act, the CAA and ARPA also provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CAA and ARPA was the ERA program, which authorized monetary assistance to individuals struggling to make rent and utility payments due to the COVID-19 pandemic.

3. In order for a household to qualify for ERA assistance, the entity administering the ERA program was required to determine that: (i) the tenant or member of the tenant's household experienced a reduction in income, incurred significant costs, or experienced other financial hardship directly or indirectly due to COVID-19; (ii) the tenant or member of the tenant's household could demonstrate a risk of experiencing homelessness or housing instability (such as receiving a past due notice from a utility company or eviction notice from a landlord); and (iii) the household income was at or below 80 percent of the median income for the area.

4. In the City of Philadelphia, the ERA program was administered by PHDC. PHDC received ERA applications via PHDC's website and reviewed the applications for compliance with ERA program requirements. A tenant could apply for ERA assistance, or a landlord could apply for ERA assistance on the tenant's behalf.

5. If PHDC approved an ERA application, PHMC disbursed to the applicant the amount of approved funds by deposits through the Automated Clearing House ("ACH").

6. PHMC made payments by sending ACH files, which contained the applicant's bank account information and the amount of the approved funds to be paid by PHMC, to TD Bank, which then processed the ACH payments.

7. In order to obtain ERA assistance in the City of Philadelphia, a tenant or landlord had to submit an electronic application and related documents via PHDC's website. If the landlord applied on behalf of the tenant, the landlord had to provide certain information, including but not limited to: (i) an application containing information about the tenant (including date of birth, last four numbers of social security number, phone number, email, and monthly income), the reasons the tenant qualified for ERA assistance, and the months for which ERA assistance was being sought; (ii) a declaration signed under penalty of perjury by the tenant stating, among other things, he or she qualified for ERA assistance and allowed the landlord to apply for ERA assistance on the tenant's behalf; (iii) a declaration signed under penalty of perjury by the landlord stating, among other things, the information provided in the application was true and correct to the best of the landlord's knowledge, and the landlord obtained written permission of the tenant to apply for ERA assistance on behalf of the tenant; and (iv) a current lease agreement.

8. As detailed below, defendant STEPHEN DUFFUS-DOYLE defrauded the United States government, PHMC, and PHDC by submitting fraudulent ERA applications, and through this scheme defendant DOYLE fraudulently enriched himself.

## THE SCHEME TO DEFRAUD

9. From in or about June 2021 to in or about September 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

## STEPHEN DUFFUS-DOYLE

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud the United States Government, PHDC, and PHMC to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

10. On or about the below dates, defendant STEPHEN DUFFUS-DOYLE, on behalf of Erion, submitted via PHDC's website, false applications and related documents, requesting ERA assistance for back rent and future rent purportedly owed to Erion by individuals who were purportedly tenants of the below addresses in Philadelphia:

| Application Date | Purported Tenant | Address / Street Name | Months of Rent Requested | Total ERA Assistance Requested |
|---|---|---|---|---|
| June 8, 2021 | Individual #1 | Address #1 / Summer Street | April 2020 to September 2021 | $29,700 |
| June 13, 2021 | Individual #2 | Address #2 / Summer Street | April 2020 to September 2021 | $27,000 |
| June 17, 2021 | Individual #3 | Address #3 / 62nd Street | April 2020 to September 2021 | $27,000 |
| June 22, 2021 | Individual #4 | Address #4 / Huntingdon Street | April 2020 to September 2021 | $29,574 |
| June 22, 2021 | Individual #5 | Address #5 / Colorado Street | April 2020 to September 2021 | $28,800 |

| Application Date | Purported Tenant | Address / Street Name | Months of Rent Requested | Total ERA Assistance Requested |
|---|---|---|---|---|
| June 22, 2021 | Individual #6 | Address #6 / Colorado Street | April 2020 to September 2021 | $27,000 |
| June 22, 2021 | Individual #7 | Address #7 / Summer Street | April 2020 to September 2021 | $30,600 |
| June 22, 2021 | Individual #8 | Address #8 / Summer Street | April 2020 to September 2021 | $27,900 |
| June 25, 2021 | Individual #9 | Address #9 / 60th Street | April 2020 to June 2021 | $22,500 |
| June 25, 2021 | Individual #10 | Address #10 / Huntingdon Street | April 2020 to June 2021 | $23,250 |

11. In each of the applications to PHDC, defendant STEPHEN DUFFUS-DOYLE falsely represented that: (i) each purported tenant resided in, or would reside in, the applicable address for the time periods during which Erion sought ERA assistance; and (ii) each purported tenant qualified for ERA assistance; when, in fact, Individuals #1 to #10 did not reside in the properties during the time periods during which defendant DOYLE sought ERA assistance, thus rendering Erion ineligible to receive the requested ERA assistance. In order to substantiate these false representations, defendant DOYLE provided to PHDC false documents, including false lease agreements, tax documents, and wage statements, and submitted affidavits with forged signatures of the purported tenants in support of the ERA applications.

12. Based on these false representations by defendant STEPHEN DUFFUS-DOYLE, on or about the below dates, PHDC approved the fraudulent applications relating to Individuals #1 to #10, and ERA assistance in the approximate amounts described below were deposited, consistent with the process described in Paragraphs 5 and 6 into a Bank of America account ending 7702, which was in the name of Erion and controlled by defendant DOYLE:

10

| Purported Tenant | Address / Street Name | Date of PHDC Approval | Date of PHMC Payment | Amount of PHMC Payment |
|---|---|---|---|---|
| Individual #1 | Address #1 / Summer Street | July 12, 2021 | July 27, 2021 | $29,700 |
| Individual #2 | Address #2 / Summer Street | July 14, 2021 | September 22, 2021 | $27,000 |
| Individual #3 | Address #3 / 62nd Street | July 16, 2021 | July 30, 2021 | $27,000 |
| Individual #4 | Address #4 / Huntingdon Street | July 16, 2021 | July 30, 2021 | $29,574 |
| Individual #5 | Address #5 / Colorado Street | July 16, 2021 | July 30, 2021 | $28,800 |
| Individual #6 | Address #6 / Colorado Street | July 16, 2021 | July 30, 2021 | $27,000 |
| Individual #7 | Address #7 / Summer Street | July 16, 2021 | July 30, 2021 | $30,600 |
| Individual #8 | Address #8 / Summer Street | July 23, 2021 | July 30, 2021 | $27,900 |
| Individual #9 | Address #9 / 60th Street | July 25, 2021 | July 30, 2021 | $22,500 |
| Individual #10 | Address #10 / Huntingdon Street | July 19, 2021 | July 30, 2021 | $23,250 |

13. From on or about July 26, 2021 to on or about September 23, 2021, defendant STEPHEN DUFFUS-DOYLE used fraudulently obtained ERA assistance funds to pay for personal expenses and costs associated with an unrelated business venture.

14. On or about the below dates, each date constituting a separate offense, in the Eastern District of Pennsylvania, defendant

**STEPHEN DUFFUS-DOYLE,**

having devised and intending to devise a scheme to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted by means of wire communication in interstate commerce, a writing, sign, signal, picture, and sound, that is, each wire communication constituting a separate count:

| Count | Date | Description |
|---|---|---|
| Three | June 8, 2021 | Fraudulent ERA application relating to Individual #1, requesting ERA assistance in the amount of $29,700, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Four | June 13, 2021 | Fraudulent ERA application relating to Individual #2, requesting ERA assistance in the amount of $27,000, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Five | June 17, 2021 | Fraudulent ERA application relating to Individual #3, requesting ERA assistance in the amount of $27,000, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Six | June 22, 2021 | Fraudulent ERA application relating to Individual #4, requesting ERA assistance in the amount of $29,574, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Seven | June 22, 2021 | Fraudulent ERA application relating to Individual #5, requesting ERA assistance in the amount of $28,800, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Eight | June 22, 2021 | Fraudulent ERA application relating to Individual #6, requesting ERA assistance in the amount of $27,000, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Nine | June 22, 2021 | Fraudulent ERA application relating to Individual #7, requesting ERA assistance in the amount of $30,600, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |

| Count | Date | Description |
|---|---|---|
| Ten | June 22, 2021 | Fraudulent ERA application relating to Individual #8, requesting ERA assistance in the amount of $27,900, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Eleven | June 25, 2021 | Fraudulent ERA application relating to Individual #9, requesting ERA assistance in the amount of $22,500, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Twelve | June 25, 2021 | Fraudulent ERA application relating to Individual #10, requesting ERA assistance in the amount of $23,250, submitted via the Internet from the Eastern District of Pennsylvania and processed through Amazon Web Service servers located outside of Pennsylvania. |
| Thirteen | July 26, 2021 | Submission of ACH file, requesting payment for the fraudulent ERA application relating to Individual #1, by PHMC from the Eastern District of Pennsylvania to TD Bank through servers located outside of Pennsylvania. |
| Fourteen | July 29, 2021 | Submission of ACH file, requesting payment for the fraudulent ERA applications relating to Individual #3 to #10, by PHMC from the Eastern District of Pennsylvania to TD Bank through servers located outside of Pennsylvania. |
| Fifteen | September 20, 2021 | Submission of ACH file, requesting payment for the fraudulent ERA application relating to Individual #2, by PHMC from the Eastern District of Pennsylvania to TD Bank through servers located outside of Pennsylvania. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT SIXTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs One, Two, Five, and Six of Counts One and Two, and Paragraphs One through Fourteen of Counts Three through Fifteen are realleged here.

2. On or about July 30, 2021, in the Eastern District of Pennsylvania, defendant

**STEPHEN DUFFUS-DOYLE**

knowingly engaged in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, that is, the purchase of an official check in the amount of approximately $102,000 from a Bank of America account ending 7728, which was in the name of Erion and controlled by defendant DOYLE, and such property was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, as alleged in Counts Five through Twelve and Fourteen.

In violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE 1

THE GRAND JURY FURTHER CHARGES THAT:

    1.    As a result of the violations of Title 18, United States Code, Section 1343, set forth in this information, defendant

## STEPHEN DUFFUS-DOYLE

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violation, including, but not limited to: (i) the sum of $314,990; and (ii) Pennsylvania Liquor License Number R213, License ID 97167.

    2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

## NOTICE OF FORFEITURE 2

THE GRAND JURY FURTHER CHARGES THAT:

    1.    As a result of the violation of Title 18, United States Code, Section 1957, set forth in this indictment, defendant

### STEPHEN DUFFUS-DOYLE

shall forfeit to the United States of America any property, real or personal, involved in such violation, and any property traceable to such property, including, but not limited to: (i) the sum of $102,000; and (ii) Pennsylvania Liquor License Number R213, License ID 97167.

    2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(1).

_Christine E Ayles for_
**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

No._____

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

STEPHEN DUFFUS-DOYLE

INDICTMENT

Counts
18 U.S.C. § 1343 (wire fraud – 15 counts); 18 U.S.C. § 1957 (monetary transaction of criminally derived property - 1 count); Notice of forfeiture